FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

by special agreement, as advantages resulting from the use of circulating medium in particular places may inhance its value.

USURY is forbidden in Spain; and I know no other interpretation to give to that word, than the taking a greater rate of interest upon a loan than is fixed by positive law, or established and permitted usage.

THE quantum of interest is claimed by the plaintiff on the ground of a special agreement, which to be usurious must exceed the customary rate of interest at the time it was made. Let therefore a jury be impanelled to ascertain that fact.

THE jury found the commercial interest, at the time of the loan was, according to usage, ten per cent. Two per cent. per ann. were accordingly deducted.

⋙●◉●⋘

### MINER vs. THE BANK OF LOUISIANA.

A bank bill may be good without the signatures of the president & cashier.

THIS was an action brought to recover one hundred dollars, the amount of a bank-note of said bank, the lower part of which was torn or worn out so that the signatures of the president and cashier were missing.

Two of the tellers deposed that they believed the note to be a genuine one, and that the blanks had been filled up by them.

THE testimony of the cashier of the bank of

the United States was introduced. This gentle-
man testified that if a bill of that bank had been
presented to him in the same plight, as the one
before the court, he would have thought it his
duty to pay it—that the bills of that bank were
first signed and the blanks afterwards filled up.
Hence on seeing a bill properly filled up by the
clerk intrusted with this part of the business of
the bank he had a moral certainty that it once
had the signatures of the president and cashier.

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

THE tellers of the bank being again examined,
deposed that if the bill produced had been emit-
ted by the bank, it must have been issued on the
2d of April 1805, when the operations of that in-
stitution commenced, on which day a very large
sum was issued—that the bills then issued had
the blanks filled up before they received the sig-
natures of the president and cashier—that no no-
tice is taken of the numbers of the bills issued
by the bank, the amount only being recorded—
that in a particular instance a counterfeited bill
had appeared so well imitated in the engrav-
ing and paper, that the signature of the presi-
dent had afforded the only clue in detecting the
imposition.

ON this testimony, *Duncan* for the plaintiff,
hoped for the judgment of the court.

*Moreau,* for the defendants. If the bank can
be called upon to pay bills which are not sanc-
tioned by the signatures of the president and

Fall 1809,
First District.

Miner
vs.
The Bank of
Louisiana.

cashier, who are the only officers by whose acts they may, in instances like this, be bound : there will be very little safety for them, and no security against the frauds of counterfeiters. Let us therefore consider—

1st. Whether the payment of a note, deprived of the signature, could be required of an individual ?

2d. Whether there be any difference in the case of a corporation ?

I. The principles of the civil and Spanish laws which regulated this territory in the year 1805, when the note was issued, are in unison with those of the common law of England. Debts like all other kinds of obligations are to be proven by an authentic title or matter of record —by the signature of the debtor or by witnesses. Each of these modes of proof has its particular rules, which we are not to confound.

The plaintiff does not pretend that his claim is proven by an authentic title or record, or by witnesses, but by a writing which is not sanctioned by the signature of the defendants.

If the party writes an instrument with his own hand, or directs another to do it for him, or seals or causes it to be sealed with his seal, the instrument, if denied, shall not be admitted against him, unless his adversary prove that it was written or sealed by him or by his order. *L.* 114, *tit.* 18. *Partida* 3.

The principles of the civil law are conformable to the Spanish law.

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

No judgment can be obtained upon a note, un-less the defendant's signature be admitted.—If it be denied, it must be proved. 2 *Pothier on Obligations*, part 4, *ch.* 1. *art.* 2, § 1, *no*, 708.

IF therefore the acknowledgment or proof of the signature be indispensable, how can judgment be had on an unsigned note?

AN instrument without a signature can only be considered as a beginning of proof. *Id. no.* 711. How can a note, the signature of which has been torn or destroyed, have a greater effect?

IT will perhaps be said that if there were not any note at all, or if the note had been lost, the plaintiff might prove the existence of the obli-gation. This is true. But how should this proof be made? In the first instance, by witnesses de-posing to the consideration and the promise: in the other, to the existence of the note and the loss or destruction of it. *Id. no.* 781. If there-fore the plaintiff were to prove that the note pro-duced was seen in his hands with the signatures of the officers of the bank, who have the power of binding the corporation, the case would be made out, but he rests his claim on the proof that the blanks in the note were filled up by the clerks of the bank. How dangerous will it be to admit the sufficiency of such testimony! In com-mon practice many persons in paying their notes think it sufficient to take them up—Some des-troy them; and others more cautious cancel their signatures and file the paper. If one of those

Fall 1809,
First District.

Miner
*vs.*
The Bank of
Louisiana.

cancelled notes, which seldom are kept with extraordinary attention, happened to fall into the hands of the payee, he might recover payment, by tearing the cancelled signature. He might prove the note to be in the defendant's handwriting, which would be conclusive evidence, if we take as such the testimony of witnesses who depose that the blanks were filled up by the ordinary clerks of the bank.

II. Let us next enquire whether there be any difference, in the case of a corporation, like the bank of Louisiana.

Corporations are artificial bodies, the affairs of which are regulated by the same principles as those of natural persons. The same principles apply to the obligations which they contract, and it seems natural to conclude that when sued, they are entitled to the same pleas and exceptions, and have the same means of defence as individuals.

I have shewn that the proof on which the plaintiff builds his hope of success would be deemed insufficient, in the case of the note of hand of an individual; the difficulty must be much greater in the case of a bank note, the greater part of the body of which is printed, and the written part of which, except the signature, is in the hand of a person who has no authority to bind the corporation. To establish the doctrine contended for by the plaintiff would be to leave banks a prey to counterfeiters, by depriving them from

one of their greatest safeguards, their depen-
dence on the signatures of their head officers;
and without protection against the frauds of their
clerks, in whom from their situation, it appears no
great confidence or trust is placed, as they have
no power to bind the institution—who do nothing
but to insert in blank spaces, the number, name
of a fictitious payee, and date—none of which are
of the essence of the obligation contracted.

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

It is in evidence that if the bill before the court
was really emitted by the bank, it was issued on
the 2nd of April 1805, the day on which the
operations of that institution began—that the bills
then sent afloat were all filled up by the clerks
before the signatures of the president and cash-
ier were put to them—and that when bills are
paid by the bank, no notice is taken, nor any
entry made of the numbers. Hence it follows
that proof of the bills of that emission having
been filled up by the clerk is no evidence of the
signing by the president and cashier, a circum-
stance which as to all these notes was posterior
to the filling up—and that even if it be admitted
that the bill was once signed, it cannot be ascer-
tained whether it was paid and cancelled by
tearing off the signatures.

*Mazureau* on the same side. It behooves the
plaintiff to prove—1st. That the signatures of the
officers of the bank who have authority to bind
the institution were to the bill, when it came to
his hands. 2d. That it is by accident they have

C

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

ceased to be there. Such at least is the proof which would be required of him if he had sued an individual, and certainly the court will not require less in a suit against a corporation sanctioned by the legislature, in whose safety most of the citizens of the territory are interested.

THE bill when it came to the plaintiff's hands, had the requisite signatures or not. If it had, he might have prevented the accident which has deprived it of them, or be able to account for it. If he received it already mutilated, he was guilty of a gross neglect. In either case, he carelessly and voluntarily exposed himself to lose the amount of the bill. The loss is *damnum absque injuriâ.*—He must impute it to his own carelessness or folly. *Damnum quod quis suâ culpâ sentit, sibi non aliis debet imputare.*

THE veracity of the cashier of the bank of United States is not intended to be impeached—but we are on a question of law, which is not to be settled by witnesses.

We contend that no instrument, an essential part of which is wanting, as the name of the parties or of the witnesses, can have any effect. *Curia Philipica,* 92, *n.* 34.

*Duncan* for the plaintiff. This case is improperly likened to that of a lost instrument, the original of which must have been proven to be genuine, before evidence could be gone into of its contents, or a copy introduced.

THE question turns entirely upon the effect of the mutilation of the bill offered as evidence of the debt, which it is contended was cancelled by the destruction of, or could not exist without, the signatures.

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

ACCORDING to the laws of Spain and common law of England, the mutilation of an instrument in an immaterial part, does not impair its validity. 4 *Rose's Comyns*, 168. *Sedgwick's Gilbert* 93, citing 11 *Coke*, 27 a. 2 *Strange* 1160, *Curia Philipica*, 92 n. 34. This principle being established, it remains to be shewn that the signatures are not of the essence of the obligation. A note, in the handwriting of the maker, without his signature or subscription is good. 5 *Rose's Comyns*, 94, 1 *Strange*, 399. *Taylor* vs. *Dobbin*. 2 *Lord Raymond*, 1376, *Elliot* vs. *Cooper*, 1 *Strange* 609. 8 *Modern* 307.

*Pothier*, it is true, n. 771, considers such a note as a beginning of proof. Be this admitted, we are then to be allowed to complete our evidence: we have done so by the testimony of the tellers, and I trust satisfactorily.

IF this principle be correct in regard to the notes of individuals, it is much stronger in the case of a bank bill. The obligation of which it is in evidence, does not arise so much from the signatures of the officers, than from the circumstance of its having been emitted by order of the board of directors.

*By the Court*, MATHEWS, *J. and* LEWIS, *J.*— This case has been likened to those of lost notes,

FALL 1809,
First District.

MINER
vs.
THE BANK OF
LOUISIANA.

bonds, deeds, or other evidences of debt. Although there is a strong analogy, we are not able to perceive a complete likeness.

Is it true, according to legal principles, that when a party intends to rely on the copy of a lost instrument, he must satisfactorily establish the previous existence of the original, but when a bank note is totally lost, or destroyed, we can conceive no possible means by which a copy could be established so as to inforce the payment of the lost note, without subjecting the bank to destructive frauds and impositions. So well are these corporations convinced of this, that in their dividends, lost notes are considered as constituting a part of their profits. Having this advantage over individuals, it would perhaps be unreasonable to confine the holder of a bank note to the same rigid principles which govern in the ordinary cases of mutilated paper: that is, that the loss of the signature or seal of the promisor or obligor must be considered as an entire destruction of the evidence of the debt.

THE signatures of the president and cashier do not bind the corporation, only because they are their agents and declare that the sums mentioned will be paid out of their funds. And if a bank note were fairly to go into circulation without any signature, would not the corporation be bound? However it is unnecessary to determine this point in this case. It is in evidence that a number of notes, of the amount, tenor and date

of that which is the object of this suit, were put afloat by the bank—that the parts of the note which remain, are proved to be genuine, and we are to infer that the remainder which is destroyed was equally so, unless we suppose that which cannot be presumed, that the clerks of the bank have contrived to defraud the corporation.

FALL 1809
First Distrist.

JUDGMENT FOR THE PLAINTIFF.